UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Magistrate No. 06-53 S |
| | ) | |
| MATTHEW SMITH, | ) | |
| Defendant | ) | |

ORDER OF DETENTION

Defendant Smith has been charged in a criminal complaint with the possession of an unregistered destructive device, in violation of 26 U.S.C. Sections 5861(d), 5841, and 5845(f). At the initial appearance on October 25, 2006, the government initially moved for pretrial detention, however a detention hearing was not held and the defendant was released to the custody of his family in a home detention program, with electronic monitoring and with specific restrictions on his time and place of travel. On November 6, 2006, as a part of his pretrial supervision, defendant was examined by Bruce B. Kerr, Ph.D., a clinical psychologist, whose Mental Health Intake Assessment Report prompted the government to move to reopen the detention proceedings. The detention hearing was held November 14, 2006.

The offense charged is a crime of violence. *See* 18 U.S.C. Section 16(a). The affidavit of Stephen E. Hickey, Jr., Special Agent Bureau of Alcohol, Tobacco & Firearms (ATF), filed in support of the complaint, alleges that defendant manufactured three pipe bombs and detonated one of them on the crossbar of the mailbox in front of Kim Karchenes' home at 90 Josiah Norton Road in Cape Neddick, Maine, and that defendant denoted another pipe bomb and attempted to detonated the third pipe bomb on his property which is located at 110 Josiah Norton Road. The affidavit of ATF Special Agent Malcolm D. Van Alstyne, Jr., submitted in support of an

application to search defendant's residence, describes that defendant and Ms. Karchenes had had a two-year relationship that ended in July, 2006; that in August, Karchenes' mailbox was found tipped over; that shortly thereafter, defendant spit on Kitchens while driving past her car on Josiah Norton Road; that the following week Karchenes found a condom and condom wrapper at the base of her mailbox; that thereafter, portions of her grass and flower bed was killed by a weed killer; that in September, a tire on Karchenes' car was found intentionally flattened; that on October 12, Karchenes found that her car had been sprayed with skunk urine; and that on October 20, the pipe bomb exploded on her mailbox.

      The defendant, age 38, has lived in York, Maine his entire life.  He has a close and supportive family.  He owns his own home, has never married, and has no children.  He is a self-employed carpenter who has been working with his father for the past eight to ten years.  His only criminal conviction was in 1996 for disorderly conduct, although in March, 2005, the York police did investigate a telephone harassment complaint against Smith in which the victims claimed that defendant dialed their number numerous times, swearing and screaming at them.  The Pretrial Services Report also indicates that several years ago the York police conducted a "well-being check" at defendant's residence at which time they found defendant intoxicated, sitting on his couch with a rifle over his lap.  The police were able to persuade defendant into putting the weapon down.

      The government seeks to have defendant detained based on its concern that, given the escalating dangerousness of defendant's conduct and his current emotional and mental state, there are no conditions of release that will reasonably assure the safety of Ms. Karchenes and/or the community.  It bears the burden of proving such by clear and convincing evidence.  There is no issue with regard to risk of flight.

Dr. Bruce B. Kerr, a licensed clinical psychologist who conducts forensic assessments for the Probation Office, testified that he interviewed the defendant for two hours on November 6, 2006.  His report of that examination was admitted as Governments Exhibit 1.  Dr. Kerr found that the defendant suffers from severe depression and severe social anxiety disorder, that he needs both psychiatric medication services and psychological counseling services, and that he would "significantly benefit from a period of hospitalization".  He testified that "defendant is in very bad shape emotionally, he has had a very high level of psychological pain for almost all of his life for which he has not been treated."  Dr. Kerr testified that the "rapidly escalating" progression of bad behavior by defendant since Ms. Karchenes ended the relationship is atypical of him and is indicative that defendant has destabilized and is now "losing control."  Of greatest concern, Dr. Kerr opined that the defendant's behavior is characteristic of the catathyric process, in which someone, after rejection, may resort to extreme violence directed at the rejector.

Dr. Joshua P. Cole, the defendant's treating psychiatrist and who is also on the staff of Spring Harbor Hospital, a mental health hospital in Westbrook, Maine, testified that he has met with the defendant twice, for 90 minutes on September 20, 2006 and for 15 minutes on October 20, 2006.  On neither occasion did defendant disclose to Dr. Cole any information about the anti-social, criminal behavior he exhibited since the break-up. Dr. Cole opined that the defendant would not benefit from in-patient hospitalization and that an appropriate treatment plan could be formulated that would allow the defendant to remain on bond and, together with the previously imposed strict conditions of pretrial release, would address the issues of dangerousness.  Such a plan would include a medical management regime, at least weekly office visits, and regular therapy counseling.  (He also opined that were the defendant to voluntarily seek admission to Spring Harbor Hospital he would not be admitted).

Finally, Richard Smith, the defendant's father, testified that this son has been "doing well" while on bond and that he seems more outgoing and talkative than he previously has been. Richard offered to post his home as bond collateral in an effort to having his son released. There is no doubt that the parents remain unquestionably committed to their son. However, it appears, as Dr. Kerr has noted, that they do not have a full understanding of defendant's mental health issues and the magnitude of his need for extensive treatment.

The issue before the Court is straightforward: Whether it has been established by clear and convincing evidence that there is a risk that, at the present time, if defendant remains on bond, he exposes Ms Karchenes and/or the community to danger that no conditions of release can reasonably protect against. I conclude that the government has met its burden. Given Dr. Kerr's years of experience conducting forensic evaluations and his expertise in this general area, I find his testimony insightful and compelling. The conclusions he makes, both in his testimony and in Government Exhibit #1, are serious and alarming. Nothing has been presented that convinces me to the contrary. In light of this new evidence, I can no longer find that the defendant's brother and parents can insure, even to a reasonable degree, community safety.

Finding that community safety and the safety of Ms. Karchenes cannot be reasonably assured by any condition of release or combination of conditions and accordingly, I **_ORDER_** that the defendant be detained pending trial. The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons waiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the

defendant to the Unites State marshal for the purposes of an appearance in connection with a court proceeding.

In light of the fact that Dr. Kerr and Dr. Cole both have determined that the defendant is in critical need of psychiatric medication services and psychological counseling services, and because such services and treatment are not available at the Cumberland County Jail, where he is currently confined, I hereby **_ORDER_** that the defendant be housed at the Federal Medical Center, Devens, Massachusetts, inasmuch as that facility is the nearest federal prison medical facility equipped to provide the defendant with necessary treatment while at the same time allowing him to consult with his attorney as necessary and appear in a timely manner in this court for further proceedings.

/s/ William S. Brownell
United States Magistrate Judge

Dated on Portland, Maine this 15th day of November, 2006.